# District Court of the Navajo Nation

Judicial District of Chinle, Arizona

---

**The Navajo Nation, Plaintiff,**

v.

**Evelyn Haag, C#34,022, Defendant.**

**Decided January 21, 1992**

---

## ORDER

Judge Wayne Cadman Sr., presiding.

WHEREAS, this matter has come on regularly for hearing on October 3-4, 1991 on an offer of Possession or Sale of Controlled Substances in violation of 17 N.T.C. § 394(a)(2), with all parties being present and represented by counsel, and the court receiving oral testimony and evidence finds:

## FINDINGS OF FACT

On March 7, 1991, members of the Navajo Division of Public Safety and the Navajo Division of Resources Enforcement executed a Warrant for Search and Seizure upon the residence of Evelyn Haag, a Navajo Indian with a census number of 34,022, who is the defendant in this matter. The residence is located 1/4 mile west of the Navajo Tribal Utility Authority offices in Chinle, Arizona.

The police officers and rangers entered the residence at 12:24 P.M. and met with the defendant. Police Sergeant Gregg Whitehat explained the Warrant for Search and Seizure to the defendant in the English language, and when she did not understand, he explained the warrant again in the Navajo language. Copies of the Warrant for Search and Seizure, Application for Warrant for Search and Seizure, and the Affidavit were also given to the defendant. In addition to explaining the contents of the warrant, Sergeant Whitehat also informed the defendant that a complete search of her residence would be made and contraband would be confiscated, an inventory of any items taken would be made, she would have to witness the search, and she had the right to remain silent.

At about 3:15 P.M., thirteen (13) unopened 375 ml. bottles of Garden De Luxe wine, two (2) 375 ml. bottles labeled "Garden De Luxe wine" partially filled with a wine like substance, two (2) air pellet pistols, seven (7) pots of planted Peyote, one (1) 10 ounce glass jar of dried Peyote, one (1) gallon glass jar of dried Peyote, one (1) pan of dried Peyote roots, one (1) container of dried Peyote buttons, one (1) gallon jar of Peyote powder, and two (2) Native American Church membership cards belonging to the defendant and her daughter, Jennifer Tayah, which were to expire on October 15, 1993, were con-

fiscated by the officers. A written inventory of the items was made and a copy was given to the defendant. The defendant was then arrested and initially charged with the offense of Delivery of Liquor in violation of 17 N.T.C. § 411.

The evidence was turned over to Carol York, Evidence Technician with the Navajo Division of Public Safety in Chinle, Arizona. She transported it to the evidence room at the Police Department and stored it there with only her having access to it.

On March 8, 1991, the defendant voluntarily entered a plea of guilty to the Delivery of Liquor offense and was sentenced to serve one hundred eighty (180) days in jail, which was suspended to (6) months probation; and on April 29, 1991, the defendant appeared with counsel and voluntarily waived a formal reading of the complaint and her civil rights, and entered a plea of not guilty to the offense of Possession of Peyote in violation of 17 N.T.C. § 394(a)(2), and was released on her own recognizance.

On May 22, 1991, a "usable quantity" of the powdered Peyote and a Peyote button which was part of the items taken from the March 7, 1991 search, were taken by the Evidence Technician to the Northern Regional Crime Lab for the Arizona Department of Public Safety in Flagstaff, Arizona for an analysis. On May 23, 1991, the items were examined and a Scientific Examination Report was made verifying that the items were from the Peyote cactus.

Robert Billy Whitehorse, who is presently a rancher and businessman residing in Cortez, Colorado, and has been a life time member of the Native American Church, serving as President for the past three (3) years and as Vice-President for seven (7) years prior, was called as a witness by the plaintiff. Mr. Whitehorse was also the signatory of the Native American Church membership cards belonging to the defendant and her daughter. Mr. Whitehorse also served on the Navajo Tribal Council as a delegate for twenty (20) years and pushed for the passage of the current Navajo Possession of Peyote statute in 1977. He is currently, and has been for the past ten (10) years, a "Roadman" with the Church.

Mr. Whitehorse was recognized as an expert witness in relation to the Native American Church and the use of Peyote for sacramental purposes in connection with the Church. It is the opinion of Mr. Whitehorse that the defendant's concurrent possession of liquor (wine) and Peyote is a violation of the terms and conditions of the Constitution and Bylaws of the Church and invalidated the defendant's membership in the Church, and therefore the exception to the possession of Peyote would not apply. The defendant did not object to the Warrant for Search and Seizure and even stipulated to its entry as evidence for the plaintiff, and remained silent throughout the proceedings.

## CONCLUSIONS OF LAW

The court has personal jurisdiction over the defendant, territorial jurisdiction as the offense is alleged to have occurred upon and within the exterior boundaries of the Navajo Indian reservation, and subject matter jurisdiction as this case

involves a statute of the Navajo Tribal Code, pursuant to 7 N.T.C. § 253.

The issue presented in this case is one of first impression in the Navajo Nation courts and requests an interpretation of the exception to the statute of Possession of Peyote, 17 N.T.C. § 394(c), which states:

> (c) Peyote. It shall not be unlawful for any members of the Native American Church to transport, buy, sell, possess or use peyote in any form in connection with recognized religious practices, sacraments or services of the Native American Church.

It appears that there are two requirements for the exception to apply in this case in a reading of the statute. The first requirement is that the defendant must be a "member of the Native American Church" as evidenced by the defendant's membership card; and that the possession of Peyote must be "in connection with recognized religious practices," and if either of these requirements is not met, then the defendant may be found guilty of possession or sale of controlled substances under 17 N.T.C. § 394(c).

When members use Peyote, it is for religious purposes. Native American Church Peyote users believe that Peyote is a sacred and powerful plant (cactus). Peyote is seen as a medicine, a protector, and a teacher pursuant to the Constitution and By-Laws of the Church. The use of Peyote is central to the Native American Church religion. The religion teaches that those who use Peyote must not use alcohol. *Testimony of Robert Billy Whitehorse.*

The defendant proved that she was a current member of the Native American Church by carrying a Church membership card.

The Indian Civil Rights Act prohibits interference with the exercise of religion. 25 U.S.C.A. § 1302(1). The United States Constitution has such a prohibition. The United States Supreme Court has taken this to mean that the government is prohibited from interfering with or attempting to regulate any citizen's religious beliefs, from coercing her to believe in something that is repugnant to her beliefs or conscience, and from directly penalizing or discriminating against her for having beliefs that are contrary to someone else's. *School District of Abington Township v. Schempp,* 374 U.S. 209, 83 S.Ct. 1560.

The United States Supreme Court has held that the "exercise of religion" often involves not only belief and profession but the performance of (or abstention from) physical acts, assembling with others for a worship service, participating in sacramental use of bread and wine, or abstaining from certain foods. The court further said that although there is no Supreme Court case on point, that a state would be "prohibiting the free exercise of religion" if it sought to ban such acts or abstentions only when they are engaged in for religious reasons, or only because of the religious beliefs that they display.

"It would doubtful be unconstitutional, for example, to ban the casting of 'statues that are to be used for worship purposes'...." *Employment Division, Department of Resources of Oregon, et. al. v. Smith,* 494 U.S. 872 (1990).

In the *Smith* case, defendants contended that their religious motivation for using peyote places them beyond the reach of criminal law that is not specifically directed at their religious practice. The right of free exercise does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982).

Where the judiciary is concerned, the constitutional guaranty of religious freedom is exempt from interference at the hands of the judiciary itself. Thus, a court may not inquire into the truth or falsity of religious beliefs, although courts may ask whether the proponent of a particular religion holds his beliefs honestly and in good faith. *People v. Woody*, 61 Ca.2nd 716, 40 Ca.Rptr. 69, 394 P.2d 813 (1964).

The guarantee of religious liberty prevents courts from adjudicating questions on interpretations of religious doctrine. *Jones v. Wolf*, 443 U.S. 595 (1979).

In this case, the defendant did not present any testimony that she had a sincere religious belief and only used Peyote in the ceremonies of the Native American Church, or had ever used it on her own outside of religious services. However, the defendant was under no obligation to do so and that would unduly place the burden of proof upon the defendant as she cannot be compelled in any criminal case to be a witness against herself as provided by the Navajo Nation Bill of Rights, 1 N.T.C. § 5 and the Indian Civil Rights Act, 25 U.S.C.A. § 1302(4). What is a "recognized religious practice" is not for the court to comment on as the statute is not based on the defendant's beliefs, and the court does not wish to inquire into or interpret religious doctrine.

It is therefore the holding of this court that to interpret the exception clause of 17 N.T.C. § 394(c) and to place the burden of its proof upon the defendants in criminal cases involving the possession, sale, or transportation of Peyote would violate their right to freely exercise their religion, and that this section violates the Navajo Nation Bill of Rights and the Indian Civil Rights Act as being too vague and restrictive.

## ORDER

IT IS THEREFORE ORDERED that the defendant is hereby acquitted of the offense of Possession or Sale of Controlled Substances, 17 N.T.C. § 394(a)(2).

IT IS FURTHER ORDERED that all items, other than the liquor confiscated by the plaintiff pursuant to the Warrant for Search and Seizure, shall be returned to the defendant after thirty (30) days from the date of this Order.